IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

LOREN D. MEYER,

          Plaintiff,

Vs.                                 No.  12-1178-SAC

CITY OF RUSSELL, KANSAS POLICE
DEPARTMENT; CITY OF RUSSELL,
KANSAS; RUSSELL COUNTY, KANSAS
DEPARTMENT OF CORRECTIONS;
OFFICER ERIC LA LICKER; OFFICER
RALPH KUHN; and OTHER UNKNOWN
OFFICERS,

          Defendants.

MEMORANDUM AND ORDER

Loren D. Meyer *pro se* filed a civil rights action pursuant to 42 U.S.C. § 1983 in the District Court of Russell County, Kansas, on April 30, 2012, alleging his constitutional rights in the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments were violated "during a routine traffic stop" on May 5, 2011.  (Dk. 1-1, p. 1).  The defendants timely removed the action to federal court and then jointly moved for a more definite statement.  The magistrate judge ordered the plaintiff to file an amended complaint that contained "a more definite statement of his claims against each of the defendants," that "specif[ied] which claims he is asserting against each of the defendants," and that "identif[ied]—to the extent known—which defendant or defendants committed the acts or omissions alleged in the

complaint." (Dk. 12, p. 3). After the plaintiff filed his amended complaint,

(Dk. 14), the defendants then filed their motions to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6). (Dks. 17, 25). While preparing this order, the court

received the plaintiff's motion to file yet another amended complaint.[1] (Dk.

35).

**PRO SE AMENDED COMPLAINT**

The *pro se* complaint comprises two pages and lists twelve

claims by title with an accompanying legal conclusion but with few, if any

substantive, factual allegations. (Dk. 14). Here are three examples of the

plaintiff's pleaded claims:

> 4. False or Wrongful arrest. Violation of KS-12-4212, Ks-22-2401,
> violation of Fourth, Fifth, and Fourteenth Amendments to the U.S.
> Constitution, as well as violation of 42 U.S.C. 1983, 42 U.S.C. 1985,
> 42 U.S.C. 1986
>> (a) This is alleged against Officer La Licker and Officer Kuhn and
>> Other unknown officer that advised Officer and assisted Officer
>> La Licker at initial traffic stop and subsequent arrest of Plaintiff.
> 5. False Imprisonment: violation of KS-8-1219, violation of Fourth,
> Fifth and Fourteenth Amendments to the U.S. Constitution, as well as
> violation of 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986.
>> (b) This is alleged against Officer La Licker, Officer Kuhn and
>> Other unknown officer, Russell County Dept. of Corrects/Russell
>> County Sheriff's Dept., Russell, Kansas Police Dept.
> . . . .
> 7. Illegal search of self and vehicle. Violation under US Constitution
> Amendment 4 and KS 22-2501, 42 U.S.C. 1985
>> (d) This is alleged against Officer La Licker and Unknown Officer
>> who searched vehicle, City of Russell, Kansas Police Department,
>> City of Russell, Kansas.

---

[1] The court intends to address that motion in a separate order. But when
relevant here, the court may take note of the plaintiff's latest proposed
changes to his claims.

(Dk. 14, pp. 1-2).  The plaintiff's remaining constitutional claims are:  "6. Illegal impound of Vehicle resulting in Damage to vehicle," "8. Theft of property in vehicle," "9. Interrogated WITHOUT Miranda Rights being read," "10. Not allowed personal belongings from car like my glasses to see what papers I was signing, and phone numbers needed to call," "11. Was not brought immediately before judge," "12. REFUSED LEGAL COUNCIL," "13. Charged EXCESSIVE BOND AND EXHIBITED UNREASONABLE CONDUCT," "14. ABUSED-slammed into 4 x 4 drunk tank, made to sit ALL DAY. Leg cuffed-paraded around town. This caused public humiliation," "15. Called NON-CERTIFIED wrecker service."  (Dk. 14, pp. 2-3).

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is to "make some allowances for 'the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F. 2d at 1110). However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156,

1159 (10th Cir. 1991). The court does not assume the responsibility of "searching the record" in favor of the plaintiff. *Garrett*, 425 F.3d at 840. Moreover, a pro se litigant is expected to "follow the same rules of procedure that govern other litigants." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (internal quotation marks and citation omitted).

## FED. R. CIV. P. 12(B)(6) STANDARDS

In deciding a Rule 12(b)(6), a court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010). This duty to accept a complaint's allegations as true is tempered by the principle that "mere labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As recently clarified by the Supreme Court, the standard under 12(b)(6) is that to withstand a motion to dismiss, "a complaint contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d

4

at 1214 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). It follows then that if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* "'A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012). "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d at 1214.

Because the defendants have supported their motions with three exhibits, (Dks. 18-1, 18-2, 18-3), the court must review the rules governing its consideration of and reliance on these exhibits.  The general rule and exceptions are here stated:

> Generally, the sufficiency of a complaint must rest on its contents alone. *See, e.g., Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) ("The district court's disposition of the complaint was irregular. Although it characterized its action as a dismissal for failure to state a claim, the court did not restrict itself to looking at the complaint."). There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights,*

5

> *Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007);
> *Oxendine* [*v. Kaplan*], 241 F.3d [1272] at 1275 [(10th Cir. 2001)]
> (documents attached as exhibits to the complaint); (2) "documents
> referred to in the complaint if the documents are central to the
> plaintiff's claim and the parties do not dispute the documents'
> authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th
> Cir.2002); and (3) "matters of which a court may take judicial notice,"
> *Tellabs, Inc.*, 551 U.S. at 322, 127 S.Ct. 2499.

*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  In its discretion, a court may "take judicial notice of publicly filed records in . . . other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 (10th Cir.) (citation omitted), *cert. denied*, 552 U.S. 969 (2007); *see Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007); *Stone v. Whitman*, 324 Fed. Appx. 726, 728 (10th Cir. 2009) (On a motion to dismiss in a 42 U.S.C. § 1983 action, court properly "took judicial notice of records from the proceedings in small claims court.")  "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Tal*, 453 F.3d at 1254 n. 24 (quoting *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), *cert. denied*, 540 U.S. 872 (2003)).

Finally, case law recognizes that the 12(b)(6) plausibility standards "will vary based on context." *Kansas Penn Gaming*, 656 F.3d at 1215 (citation omitted).  With § 1983 actions against public officials sued for damages in their personal capacities and entitled to qualified immunity,

"[t]he *Twombly* standard may have a greater bite in such contexts,

appropriately reflecting the special interest in resolving the affirmative

defense of qualified immunity at the earliest possible stage of litigation."

*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal

quotation marks and citations omitted). This is a particularly true with §

1983 actions involving "complex claims against multiple defendants." *Smith*

*v. United States*, 561 F.3d at 1104. The panel in *Robbins* explained:

> We reiterate that context matters in notice pleading. Fair notice under
> Rule 8(a)(2) depends on the type of case. In § 1983 cases, defendants
> often include the government agency and a number of government
> actors sued in their individual capacities. Therefore it is particularly
> important in such circumstances that the complaint make clear exactly
> who is alleged to have done what to whom, to provide each individual
> with fair notice as to the basis of the claims against him or her, as
> distinguished from collective allegations against the state.

519 F.3d at 1249-50 (internal quotation marks and citations omitted).

**ANALYSIS**

The defendants point to their motion for more definite statement

and to the opportunity given the plaintiff to "put forward specific,

nonconclusory factual allegations" that would "assist the court determining

whether qualified immunity ought to be imposed at this earliest possible

stage or whether the complaint is sufficiently plausible that it merits

imposition of the burdens of discovery on state actors." *Robbins v*

*Oklahoma*, 519 F.3d at 1249 n.2. The defendants' motions are well taken for

the plaintiff's amended complaint offers little more than legal labels and

conclusory accusations that he was wronged.  While "the pleading standard

Rule 8 announces does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

"'To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 offers a federal remedy to a person who has been deprived of his federal rights by a person acting under color of state law. *Conn. v. Gabbert*, 526 U.S. 286, 290 (1999). To state a § 1983 claim, the plaintiff must allege the personal involvement of the defendant public official, that is, the defendant "caused the constitutional deprivation." *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (internal quotation marks and citations omitted). While the plaintiff's complaint is replete with citations to Kansas statutes, "§ 1983 affords a remedy for violations of federal law and does not provide a basis for redressing violations of state law." *D.L. v. Unified School Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (internal quotation marks and citations omitted). The defendants contend the plaintiff's amended complaint fails to allege a plausible constitutional deprivation.

<u>"False or Wrongful Arrest"</u>

As quoted above, the plaintiff's amended complaint on this claim pleads only this title, several citations to state statutes, federal statutes and constitutional amendments, and the following sentence:  "This is alleged against Officer La Licker and Officer Kuhn and Other unknown officer that advised Officer and assisted Officer Lalicker at initial traffic stop and subsequent arrest of Plaintiff."  (Dk. 14, p. 1).  Because the plaintiff's complaint fails to allege any facts to support a claim that his arrest on the traffic violation was unlawful, one is left to speculate what the plaintiff is attempting to plead.

If the plaintiff presumes to bring an action based on the officers lacking probable cause to arrest him for the traffic violation, the plaintiff has not alleged any specific facts stating a plausible claim. Nor can the plaintiff allege such a claim. The trial transcript attached to the defendant's motion shows not only that Mr. Meyer was cited, arrested and convicted for the same license tag violation, but that his car did not have a license tag displayed was a fact and element which Mr. Meyer admitted to the state district court. (Dk. 18-2, pp. 4, 6, 10-14). *See York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) ("Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." (quotation omitted)).

If the plaintiff presumes to sue asserting the defendants could not have arrested him for a traffic violation, then his claim fails to allege a constitutional violation.  The Supreme Court has held that "'[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Brendlin v. California*, 551 U.S 249, 263 n.7 (2007) (quoting *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)). "[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of public and private interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008). Thus, the officers could lawfully arrest and detain Mr. Meyer at the county jail based on his traffic violation.  *See United States v. Lara-Garcia*, 478 F.3d 1231, 1235 (10th Cir.), *cert. denied*, 550 U.S. 948 (2007). The plaintiff has failed to allege a constitutional violation actionable under § 1983.

## "False Imprisonment"

As quoted above, this claim is nothing but a label and a conclusion. There are no specific factual allegations to this claim that inform as to the factual basis or plausibility of the claim. The authorities cited and discussed above establish that the plaintiff's constitutional rights were not violated when he was arrested and detained immediately after his traffic violation. *See United States v. Lara-Garcia*, 478 F.3d at 1235. Meyer's

admission before the district court that his car did not have a license tag displayed establishes the officer had probable cause for stopping, issuing a citation, and arresting him for this traffic violation. Thus, there is no factual or legal basis alleged for a claim that the defendants unconstitutionally restrained Meyer after the traffic stop and until his release later that same day. (Dk. 18-2, p. 14). There is no facial plausibility to the plaintiff's claim.

"Illegal Impound of Vehicle" and "Illegal search of self and vehicle"

Meyer first alleges the "Illegal Impound of Vehicle resulting in Damage to vehicle" in violation of state statutes, Fourth and Fifth Amendments, 42 U.S.C. § 1985, 42 U.S.C. § 1986.[2]  (Dk. 14, p. 2). He alleges this claim against the Officer LaLicker, the city defendants and the sheriff's department.  Meyer next alleges the "Illegal search of self and vehicle" in violation of Fourth Amendment, a state statute, and 42 U.S.C. § 1985.  *Id.* He alleges that "Officer LaLicker and Unknown Officer who searched vehicle, City of Russell, Kansas Police Department, City of Russell, Kansas" are the defendants to this "illegal search" claim. These claims suffer from the same pleading deficiencies of mere labels and the lack of facts. Having alleged only conclusory statements of law, there is nothing here that plausibly suggests any claim for relief against the defendants.

The legal propositions presumed in these conclusory claims fail to state an actionable theory of relief.  "Under the community caretaking

---

[2] The plaintiff's proposed second amended complaint does not assert a claim for illegal impoundment of his vehicle.

doctrine [and for] concerns about theft or vandalism," the defendant officers
were justified in impounding Meyer's vehicle upon his lawful arrest. *See*
*Hackett v. Artesia Police Dept.,* 379 Fed. Appx. 789, 793-94. 2010 WL
2113456 at *3 (10th Cir. 2010) (constitutional rights not violated by
impounding vehicle after arrest for citations for traffic violations); *United*
*States v. Hunnicutt*, 135 F.3d 1345, 1351 (10th Cir. 1998) (vehicle properly
impounded as authority to operate not conferred to passengers who could
not produce verification of insurance). An inventory search of the impounded
vehicle is also constitutionally proper:

> It is common practice for the police to conduct an inventory of
> the contents of vehicles they have taken into their custody or are
> about to impound. Such inventories are now a well-defined exception
> to the warrant requirement of the Fourth Amendment. They are not
> treated as investigative searches because they serve three
> administrative purposes: the protection of the owner's property while
> it remains in police custody, the protection of the police against claims
> or disputes over lost or stolen property, and the protection of the
> police from potential danger.
> Although inventory searches need not be supported by a warrant
> or probable cause, they are restricted in other ways. First, they are
> reasonable only if conducted according to standardized procedures.
> Second, the policy or practice governing inventory searches should be
> designed to produce an inventory; in other words, an inventory search
> must be justified by the administrative purposes of such searches. An
> inventory search must not be a ruse for a general rummaging in order
> to discover incriminating evidence.

*United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (internal
quotation marks and citations omitted); *see Kilgore v. City of* Stroud, 158
Fed. Appx. 944, 950 (10th Cir. 2005) (Actions were "entirely proper" in
conducting inventory search of vehicle to be impounded following the

driver's arrest); *Smyth v. City of Lakewood*, 83 F.3d 433 (10th Cir. 1996)
(Table) (Following arrest, officers acted reasonably and properly in
impounding car and conducting inventory search.)  There are no allegations
that the impoundment and inventory search here "were not standard
procedure in these circumstances or that the search was conducted for any
purpose other than to protect the property."  *Brandon v. Moore*, 2012 WL
569163, at *8 n.7 (N.D. Okla. 2012).

The plaintiff's claim entitled "Illegal search of self and vehicle" is
vague in alleging which officers are responsible for searching him and when
and where the alleged search occurred.  "When police officers have probable
cause to believe a person has committed a crime in their presence, the
Fourth Amendment permits a warrantless arrest—and a search incident to
that arrest—regardless of whether the crime qualifies as an arrestable
offense under applicable state law." *United States v. Turner*, 553 F.3d 1337,
1345 (10th Cir.) (summarizing holding in *Virginia v. Moore*, 553 U.S. 164,
178 (2008)), *cert. denied*, 129 S. Ct. 2446 (2009). The plaintiff has not
alleged any facts supporting a viable legal theory on which to bring an
actionable and plausible claim for a constitutional violation.

"Theft of property in vehicle"

The plaintiff alleges only this title and then claims a violation of
the Fifth Amendment, 42 U.S.C. §§ 1985 and 1986, was committed by
"Officer LaLicker and Unknown Officer as well as Officer Kuhn, City of

Russell, Kansas, Russell, Kansas Police Department."[3]  (Dk. 14, p. 2). If Meyer is intending to plead a procedural due process violation under the Fourteenth Amendment, the law is well settled that the plaintiff's complaint must allege facts showing the lack of an adequate state remedy for the deprivation. *Gee v. Pacheco*, 627 F.3d at 1194 (citing *Hudson v. Palmer*, 468 U.S. 517, 533(1984)). Because there is nothing alleged to suggest that tort actions available under state law would not provide an adequate remedy, there is no constitutional deprivation of property without due process of law for purposes of the Fourteenth Amendment or § 1983. *See Dalton v. City of Las Vegas*, 292 Fed. Appx. 652, 654 (10th Cir. 2008) (citing *Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled on other grounds by*, *Daniels v. Williams*, 474 U.S. 327 (1986)), *cert. denied*, 130 S. Ct. 52 (2009); *Pacheco v. Wagnon*, 2008 WL 755059 at *5 (D. Kan. 2008). Nor is there any taking of property in violation of the Fifth Amendment. *See City of Monterey v. Del Monte Dues at Monterey, Ltd.*, 526 U.S. 687, 714-15 (1999); *Wilson v. United States*, 29 Fed. Appx. 495, 496-97 (10th Cir. 2002). The plaintiff has not alleged a plausible constitutional deprivation of property claim.

"Not allowed personal belongings from car"

The entirety of this claim is the plaintiff's allegation that he was "[n]ot allowed personal belongings from car like my glasses to see what papers I was signing, and phone numbers needed to call. This is a violation

---

[3] The plaintiff's proposed second amended complaint does not include a claim for theft of property.

of KS statute 8-1103, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986."[4]

(Dk. 14, p. 2). He brings this claim against all of the named defendants.

The plaintiff fails to allege any facts showing that this temporary denial of his

belongings violates his constitutional rights or any facts showing that he

lacks an adequate state remedy for such a deprivation.   He has not alleged a

plausible claim of a constitutional violation.

"Interrogated WITHOUT Miranda Rights being read"

This quoted label is the entirety of the plaintiff's allegation that

he claims to be a violation of the Fifth Amendment, 42 U.S.C. §§ 1983,

1985, and 1986.[5] (Dk. 14, p. 2). He brings this claim against "Officer

LaLicker, Officer Kuhn, the Russell County Kansas Department of

Corrections/Russell County Kansas Sheriff's Department, City of Russell,

Kansas, City of Russell, Kansas, Police Department." *Id.* Not only does the

plaintiff fail to allege sufficient facts that plausibly suggest the defendants'

liability, the law is well settled that an alleged failure to warn an individual of

their Miranda rights alone cannot form the basis of a § 1983 claim for

liability. *Chavez v. Martinez*, 538 U.S. 760, 772–73 (2003) (plurality

opinion); *Bennett v. Pasic*, 545 F.2d 1260, 1263 (10th Cir. 1976); *Marshall

v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1165 n. 6 (10th Cir. 2003);

---

[4] This claim is not found in the plaintiff's proposed second amended complaint.

[5] The court can find no claim for a violation of *Miranda* rights in the plaintiff's proposed second amended complaint. In his response to the motion to dismiss, the plaintiff adds that Officer Kuhn interrogated him following his arrest without first reading him the *Miranda* rights.

*see Haulman v. Jefferson County Sherrif Office*, 15 Fed. Appx. 720, 721 (10th Cir. 2001) ("[T]he law in this circuit is clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence." (citations omitted)). The state district court transcript shows the defendant did not dispute the facts and admitted his car "did not have license plates on the vehicle."  (Dk. 18-2, p. 4).  The plaintiff is unable to plead a plausible claim of a Fifth Amendment violation.

"Was not brought immediately before judge"

Following this sentence fragment, the plaintiff alleges: "Violation of KS statute 8-1219, 82104, 12-4213, 22-2901, 42 U.S.C. 1986."[6]  The plaintiff asserts this claim against "Officer Kuhn and Officer LaLicker and Unknown Officer that advised Lalicker on arrest, other unknown jailers present, as well as the Russell County Sheriff's Department/Russell County Kansas Department of Corrections and the City of Russell, Kansas, Police Department." (Dk. 14, p. 2). This claim is devoid of specific factual allegations on the length of this delay or the length of his detention.  In a later claim, the plaintiff also alleges he was "made to sit ALL DAY" in a "4 x 4 drunk tank." (Dk. 14, p. 3). In the state court transcript, Meyer told the court that he "spent most of the day" in jail and was released the evening of his arrest once a bond was posted.  (Dk. 18-2, p. 14).

---

[6] This claim does not appear in the plaintiff's proposed second amended complaint.

Judicial determinations of probable cause that occur within 48 hours of the arrest "will, as a general matter, comply with" the constitutional requirement of a prompt hearing. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). A probable cause determination occurring within the 48-hour period may offend the promptness requirement if the arrestee can allege and prove other circumstances showing the delay to be unreasonable. *Id*. From the allegations in the complaint, it appears the plaintiff's detention "did not come close to approaching the 48-hour deadline." *United States v. Lara-Garcia*, 478 F.3d at 1235 n.2. The plaintiff fails to allege a constitutional violation of the promptness requirement.

"REFUSED LEGAL COUNCIL (sic)" and "violation of my Miranda rights"

The plaintiff makes the blanket allegation that he was "refused" legal counsel in violation of the Sixth Amendment without any allegations supporting the legal propositions to such a claim.[7] The claim lacks the necessary specificity required to state a plausible claim for relief. His claim is brought only against the law enforcement officers and their departments. Most importantly, the plaintiff fails to allege that a prosecution had commenced when the officers allegedly refused his Sixth Amendment request for legal counsel. As the Tenth Circuit has held, this is proper grounds for dismissal:

---

[7] The plaintiff does not include this claim in his proposed second amended complaint.  In his response to the motion to dismiss, the plaintiff suggests this claim is based on being denied an immediate phone call to his attorney following his arrest.

> The Sixth Amendment right to assistance of counsel "does not attach until a prosecution is commenced." *Rothgery v. Gillespie Co., Tex.*, ---U.S. ----, ----, 128 S.Ct. 2578, 2583, 171 L.Ed.2d 366 (2008). A prosecution does not commence until " 'the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Id.* (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984)). Mr. Pearson's complaint does not state that a prosecution had commenced at the time the officers allegedly violated his Sixth Amendment right to counsel. Therefore, the district court properly dismissed this claim.

*Pearson v. Weischedel*, 349 Fed. Appx. 343, 348, 2009 WL 3336117 at *4 (10th Cir. 2009).  Because the plaintiff's sentence was only a fine, costs and fees and did not include any time in jail, as the trial transcript reflects, the defendants correctly argue that the plaintiff has failed to allege facts supporting his right to appointed counsel. *See Scott v. Illinois*, 440 U.S. 367, 373–74 (1979) (holding that "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense.").  Finally, as discussed above, the Tenth Circuit law is "clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence." *Haulman v. Jefferson County Sherrif Office*, 15 Fed. Appx. at 721 (citations omitted). The plaintiff has not alleged a plausible constitution claim based on the denial of counsel or on the violation of his *Miranda* rights.

 "Charged EXCESSIVE BOND AND EXHIBITED UNREASONABLE CONDUCT"

The above quoted title constitutes the plaintiff's entire claim at ¶ 13 of his amended complaint.[8] He alleges this conduct violates Kansas statutes, the Eighth Amendment, and 42 U.S.C. §§ 1983, 1985 and 1986. The plaintiff includes all of the named defendants on this claim, and he fails to allege which of the named law enforcement officers or agencies personally participated in setting the appearance bond in his case. Because the claim alleges nothing more than a conclusion devoid of any supporting facts, it fails to allege a plausible claim for relief. There are no allegations to indicate the bail here was set at an amount higher than necessary to ensure Mr. Meyer's appearance at trial.[9] The allegation of "unreasonable conduct" does not state a claim for relief.[10]

"ABUSED"

In paragraph numbered 14, the plaintiff alleges:

> ABUSED-slammed into a 4 x 4 drunk tank, made to sit ALL DAY. Leg cuffed-paraded around town. This caused public humiliation. Violation

---

[8] There are no allegations of an excessive bond in the plaintiff's proposed second amended complaint.

[9] In his response to the motion, the plaintiff offers his reading of state law and calculates that the proper bond amount should have totaled $202 rather than the $750 that was set against him.  As discussed later, a violation of state law here does not establish a constitutional violation.

[10] The defendants further seek dismissal based on the deference to be shown the state magistrate judges in setting bail amounts. The defendants in their reply memorandum attach the City of Russell Municipal Court Administrative Order dated October 5, 2010, that includes an attached schedule of fines and bonds for city ordinance violations. This schedule appears to authorize bonds totaling $750.00 on the municipal ordinance violations for which Meyers was cited and arrested. Even though with a proper supporting affidavit this order and schedule could be the subject of judicial notice, the court will not do so, because it is new to the defendants' reply.

19

> of the Fifth and Fourteenth Amendment to the U.S. Constitution. Also violation of the 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986.
> (k) This is alleged against Officer Kuhn and other Unknown Officer present in jail and other unknown officer that hand and leg cuffed Plaintiff to take Plaintiff to ATM machine, Russell County Department of Corrections/Russell County Kansas Sheriff's Department.

(Dk. 14, p. 3).[11] Eighth Amendment standards are "the benchmark" for the plaintiff's due process claim challenging the conditions of his pretrial confinement. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing in part *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The elements for pleading such a claim are:

> To establish an Eighth Amendment conditions-of-confinement claim, "a plaintiff must satisfy two requirements, consisting of an objective and [a] subjective component." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quotation omitted). To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006). "The subjective component requires the jail official to have a sufficiently culpable state of mind. In the context of prison-conditions claims, the required state of mind is one of deliberate indifference to inmate health and safety." *McBride*, 240 F.3d at 1291 (quotation omitted).

*Lewis v. McKinley County Bd. Of County Com'rs*, 425 Fed. Appx. 723, 726-27 (10th Cir. 2011). "[O]nly those deprivations denying the minimal civilized

---

[11]The plaintiff's proposed second amended complaint does not claim a violation of any Eighth Amendment rights arising from the conditions or treatment during his detention.

measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted) (quotation omitted). "[T]he Constitution does not mandate comfortable prisons," and conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

Most favorably construed, the plaintiff's allegations are that he was forcibly placed in a small drunk tank where he was required to sit for less than a day and that he was required to wear hand and leg restraints when officers took him to ATM machine.  The plaintiff had not alleged sufficiently serious deprivations to constitute a constitutional claim.  *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 188 (10th Cir. 2003) (plaintiff conclusorily alleged "heinous conditions" and later averred that he was restrained for five hours "in a filthy cell with no toilet in [his] bare feet" are not enough for a constitutional violation); *Davison v. Stout*, 44 Fed. Appx. 404, 406-407, 2002 WL 1897941 at *2 (10th Cir. 2002) (three-day incarceration in a municipal jail without a toothbrush, toilet paper, and soap does not allege an Eighth Amendment claim). Nor has the plaintiff alleged the required mental state of the defendants.  There is no hint of facts appearing in the amended complaint to move this claim into the plausible category.[12]

---

[12] The County defendants also argue for Eleventh Amendment immunity on this claim for conditions of pretrial confinement. The defendants concede the governing precedent that treats a defendant's removal to federal court as a

"Called NON-CERTIFIED wrecker service"

The plaintiff alleges this is a violation of "KS 66—1330, 42 U.S.C. 1986." (Dk. 14, p. 3). There is no factual or legal basis for the plaintiff's allegation that using a "non-certified" wrecker service to tow his vehicle constitutes a violation of 42 U.S.C. § 1986. As in this claim and many of the plaintiff's other claims, he cites Kansas statutes.  The Tenth Circuit case law is well settled that a mere "'violation of state law cannot give rise to a claim under Section 1983.'" *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008) (quoting *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003)). A § 1983 claim is not the proper vehicle "'for redressing violations of state law, but only for those violations of federal law done under color of state law." *Id.* (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)). "[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim." *Romero v. Board of County Com'rs of County of Lake, State of Colo.*, 60 F.3d 702, 705 (10th Cir. 1995) (citations omitted) (excessive force claim), *cert. denied*, 516 U.S. 1073 (1996); *see Bowling v. Rector*, 584 F.3d 956, 966 (10th Cir. 2009) (Under Fourth Amendment jurisprudence,

---

waiver of this immunity, but they raise this issue to preserve it for any appeal. "A state's removal of a case to federal court is a voluntary invocation of federal jurisdiction sufficient to waive that state's Eleventh Amendment immunity. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 624, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)." *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007). The defendants waived Eleventh Amendment immunity in their removal of this action.

the violation of state law is not the same as a constitutional violation, but it may be relevant in determining reasonableness particularly when state interests are a recognized factor). The defendants correctly note "that none of the statutes that Meyer identifies—traffic regulations and state criminal procedure provisions—give rise to any civil liability under state law." (Dk. 18, p. 26). The court finds no plausible constitutional claim advanced on the mere conclusory allegation that any of the cited Kansas statutes were violated.

<u>Qualified Immunity</u>

This defense for the law enforcement officers sued in their individual capacities is generally advanced at summary judgment, but it may be raised in a motion to dismiss. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). While the complaints in such instances need not "include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law," they "must meet the minimal standard of notice of pleading as articulated by the Court in *Twombly*." *Robbins v. Oklahoma*, 519 F.3d at 1249. "The *Twombly* standard may have greater bite in such contexts," however, so that a complaint's allegations "make clear the grounds on which the plaintiff is entitled to relief" and the court may "perform its function of determining at an early stage in the litigation whether the asserted claim is clearly established." *Id.* (internal quotation marks and citations omitted).

Qualified immunity shields from liability government officials performing discretionary functions "if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Perez v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 432 F.3d 1163, 1165 (10th Cir. 2005), *cert. denied*, 548 U.S. 905 (2006). A two-part test is used to analyze the qualified immunity defense:

> "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quotations and ellipses omitted).

*Brown v. Montoya*, 662 F.3d 1152, 1162-64 (10th Cir. 2011). Because, as fully discussed above, the plaintiff's amended complaint fails to allege facts that make out constitutional violations, the individual defendants are entitled to qualified immunity on the pleaded claims. While a valid qualified immunity defense will relieve defendants of individual liability, it does not shield defendants from claims against them in their official capacity or from claims for prospective equitable relief.[13] *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 819 n.34 (1982); *see also Meiners v. University of Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004).

---

[13] The plaintiff's amended complaint effectively pleads only for compensatory and punitive damages. His proposed second amended complaint offers additional allegations in support of declaratory and injunctive relief.

<u>Official Capacity Claims</u>

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006) (quotation marks and citation omitted); *see also Goings v. City of Pittsburg,* 2011 WL 4093440 at *9 (D. Kan. 2011). There is no basis for municipal liability as the plaintiff has not alleged any underlying constitutional violation by any of the officers. Because the doctrine of respondeat superior is unavailable to make a governmental entity liable under § 1983, the plaintiff also must allege that her injuries were the result of a municipal "government's policy or custom" in trigger possible liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). A plaintiff must show the existence of a policy or custom and a direct causal link between that policy and his alleged constitutional injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). As there are no allegations in the plaintiff's amended complaint linking a policy or custom of the city or county defendants to his alleged injuries, the court cannot maintain any plausible claim for municipal liability.

<u>42 U.S.C. §§ 1985 and 1986</u>

Of the plaintiff's 12 enumerated claims, he pled both of these federal statutes in eight of them, a violation of only 42 U.S.C. § 1986 in three of them, a violation of only 42 U.S.C. § 1985 in one of them. Meyer

has not pleaded any facts in his amended complaint to support actions under these statutes. The plaintiff's amended complaint fails to allege specific facts in support of actionable claims under either statute.

The plaintiff does not allege a conspiracy to deprive him of equal protection in which the named conspirators acted or failed to act because of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" to his injury.[14] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). Nor does he allege any factual basis for a conspiracy, that is, "the combination of two or more persons acting in concert" *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990). In order to state a claim of a conspiracy, the plaintiff must allege "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id*. at 1231. "[F]ailing a cause of action under § 1985(3), there is no cause of action under § 1986." *Phillips v.*

---

[14] The Tenth Circuit in *Yaklich v. Grand Country*, 278 Fed. Appx. 797, 801-02 (10th Cir. 2008), observed:

> "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (footnote omitted). In other words, "[i]n order to support a section 1985(3) claim, the plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the [protected] class." *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir.1980).

> Outside the context of racial discrimination, the Supreme Court has not defined what 'otherwise class-based' discrimination may be protected under § 1985(3)."

*Kerns*, 2012 WL 1678974 at *3 (10th Cir. 2012); *see Abercrombie v. City of Catoosa*, 896 F.3d at 1230 ("Section 1986, which provides an action for neglecting to prevent a violation of Section 1985, is premised upon the existence of a valid Section 1985 claim." (citation omitted)); *Muhammad v. Morton*, 2006 WL 687161, at *4 (W.D. Okla. 2006).  The plaintiff has failed to allege that he is a member of any protected class of persons and that an actual conspiracy existed between the defendants.  Because he has failed to plead a valid claim under 42 U.S.C. § 1985, his 42 U.S .C. § 1986 claim must also fail. *Walbert v. Wichita Police Dept.*, 2011 WL 2473143, at *3 (D. Kan. 2011).

<u>Dismissal</u>

In this position, district courts of the Tenth Circuit are to follow this general rule:

> But ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, *see Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." (brackets and internal quotation marks omitted)); and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint, *cf. Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (reversing dismissal with prejudice, in part because of district court's failure to explain to pro se plaintiff what is required by Fed.R.Civ.P. 8).

*Gee v. Pacheco*, 627 F.3d at 1186. "[T]he plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint."

*Id.* at 1195 (quotation marks and citation omitted).  The plaintiff's claims here do not come close to stating a claim.  Moreover, if the court were to disregard all conclusory statements of law and consider whether the remaining specific factual allegations plausibly stated a claim, there would be essentially nothing left to consider as allegations. *Cf. Kansas Penn Gaming*, 656 F.3d at 1214.

In his response to the defendants' motion, the plaintiff does not ask the court to reserve him an opportunity to correct his pleading deficiencies.  While the court was researching and drafting this order, the plaintiff filed a motion seeking leave to file a second amended complaint. (Dk. 35). Meyer argues for leave because he "feels that allowing the Second Amended Complaint would clear up some issues" and "would also satisfy the requirements needed."  (Dk. 36).

Meyer's first amended constituted three pages, and his proposed second amended complaint is now ten pages. The court understands the plaintiff intends his most recent motion for leave to address the issues created by the defendants' motions and to meet the pleading deficiencies argued there.  The district court, therefore, will treat the plaintiff's motion as his attempt to cure his pleading problems, and it will rule upon this motion in the first instance after timely receipt of the defendants' responses and the plaintiff's reply.  Thus, the court shall grant the motions to dismiss on the grounds stated above subject to its consideration of the plaintiff's motion for

leave to file a second amended complaint. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

IT IS THEREFORE ORDERED that defendants' motions to dismiss (Dks. 17, 25) are granted subject to the court's decision on the plaintiff's pending motion for leave to file a second amended complaint (Dk. 35).

Dated this 15th day of October, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge