IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

LOREN D. MEYER,

           Plaintiff,

Vs.                                                                 No.  12-1178-SAC

CITY OF RUSSELL, KANSAS POLICE
DEPARTMENT; CITY OF RUSSELL,
KANSAS; RUSSELL COUNTY, KANSAS
DEPARTMENT OF CORRECTIONS;
OFFICER ERIC LA LICKER; OFFICER
RALPH KUHN; and OTHER UNKNOWN
OFFICERS,

           Defendants.

MEMORANDUM AND ORDER

      Loren D. Meyer *pro se* brought this civil rights action in state court alleging his constitutional rights in the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments were violated in "a routine traffic stop" on May 5, 2011. (Dk. 1-1, p. 1). After removing the action to federal court, the defendants asked for a more definite statement, and the magistrate judge required Mr. Meyer to file an amended complaint that named the defendants to each claim and that identified the acts/omissions alleged against each defendant. The defendants filed their Rule 12(b)(6) motions to dismiss against the plaintiff's amended complaint.  While drafting its order on those motions, the court received the plaintiff's pending motion for leave to file a second amended complaint. (Dk. 35).

The court filed its 29-page order on October 15, 2012, granting the defendants' motions to dismiss subject to its ruling on the plaintiff's motion for leave. (Dk. 37). As discussed in his motion, Mr. Meyer seeks leave to amend in order to address those issues argued in the defendants' motions and to cure pleading deficiencies. So, the court now "will treat the plaintiff's motion as his attempt to cure his pleading problems, and it will rule upon this motion in the first instance after timely receipt of the defendants' responses and the plaintiff's reply." (Dk. 37, p. 28). The defendants have filed a joint memorandum arguing that the plaintiff's motion to amend should be denied as futile. (Dk. 38).

The time for Mr. Meyer to file his reply expired on November 2, 2012. See D. Kan. Rule 6.1(d). The *pro* se plaintiff, however, waited until November 19, 2012, to file a reply without seeking an extension of time or a showing of excusable neglect. The court's drafting of its final order was nearly done when this untimely filing arrived. In these circumstances, the rules instruct a court to treat the party as having waived the right to file the overdue reply and to regard the defendants' arguments on futility as being uncontested. See D. Kan. Rule 7.4(b). The court has read and weighed all of what Mr. Meyer argues in his reply. There is nothing in it that impacts or changes any of the court's conclusions reached before considering it. While the court finds the plaintiff to have waived his right to file a reply, this order

2

will be supplemented with footnotes addressing several unique arguments first raised in this reply brief.

**STANDARDS**

Having granted the defendants' motions to dismiss subject to its ruling on the plaintiff's motion for leave, the court first looks to the Tenth Circuit's rule that "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) (internal quotation marks and citation omitted). "[T]he district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim." *Curley v.* Perry, 246 F.3d 1278, 1284 (10th Cir.), *cert. denied*, 534 U.S. 922 (2001). While Fed. R. Civ. P. 15(a)(2) instructs that leave should be given "freely . . . when justice so requires," a court may refuse leave "if the amendment would be futile." *U.S. ex. rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 166 (10th Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The rationale is plain:

> [A] "court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." [*Perkins v. Silverstein*, 939 F. 2d 463,] Id. at 472 [(7th Cir. 1991)]; *see also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist.*, 133 F.3d 1054, 1057 n. 4 (7th Cir.1998) (recognizing exception to right to amend once as a matter of course). A contrary holding "would impose upon the defendants and the courts the

arduous task of responding to an obviously futile gesture on the part of the plaintiffs." *Perkins*, 939 F.2d at 472. *Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 558 (7th Cir. 2004). A court also may consider whether "it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal . . . ." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotations, alterations, and citations omitted.)).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The burden of showing futility rests with the defendants who assert this ground in opposing the plaintiff's leave to amend. *Synthes, Inc.v. Marotta*, 281 F.R.D. 217, 231-32 (E.D. Pa. 2012); *Boykin v. CFS Enterprise, Inc.*, 2008 WL 4534400 at *3 (D. Kan. 2008). The standards of dismissal as stated in the prior order include:

> In deciding a Rule 12(b)(6), a court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010). This duty to accept a complaint's allegations as true is tempered by the principle that "mere labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As recently clarified by the Supreme Court, the standard under 12(b)(6) is that to withstand a motion to dismiss, "'a complaint contain enough allegations of fact, taken as true, to state a claim to

4

> relief that is plausible on its face.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). It follows then that if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* "'A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012). "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d at 1214.

(Dk. 37, pp. 3-4).

## DISCUSSION AND ANALYSIS

As noted in the court's prior order, Mr. Meyer describes his latest pleading effort as intended to clarify some issues argued in the defendants' motions to dismiss and to satisfy the pleading requirements also raised in those motions. (Dk. 37, p. 28). His proposed second amended complaint is three times longer than his first amended complaint. What Mr. Meyer adds are mostly formulaic recitations against the entity defendants in an effort to clear hurdles for legal liability. What the proposed additions do not offer are any more factual allegations specific to him or to the events that transpired on May 5, 2011, in Russell County, Kansas. Instead, Mr. Meyer seems to be making the leap to an entirely new legal theory overarching all his claims for

relief. He now charges "a continuing pattern and practice of illegal traffic stops, illegal detentions and illegal searches of out of state or out of county motorists traveling on the public streets and highways of the State of Kansas." (Dk. 35, p. 3). He appears to couch this theory on the introductory allegations that he is a resident of Nebraska who was a "victim of an intrusive law enforcement stop and was detained and denied many of his liberties and freedoms afforded" by the United States Constitution and the State of Kansas Constitution. *Id.* Not only does he seek relief "for violations of his civil rights due to illegal policing," but he wants to have confirmed "what everyone has a right to expect in the United States; that people of all States may use the public streets and highways of all states, just like anybody else, without having to suffer the indignities of discrimination at the hands of government officials." *Id.* Mr. Meyer also asserts that the defendants receive federal funds and so "are legally required to conduct its (sic) activities in a non-discriminatory manner." (Dk. 35, p. 4). He further alleges that the defendant law enforcement agencies failed to train and to promulgate policies "to prevent biased vehicular stops, and biased based citations." *Id.*

Under the heading of "facts giving rise to this action," Mr. Meyer sets out six paragraphs that constitute his central allegations. He generally indicts the drug interdiction techniques used by law enforcement agencies across the nation. He does not link, however, any of these techniques to the

6

circumstances of his traffic stop or to the defendant's actions taken toward him.

>    Paragraph 18 alleges:
>
>    The defendants have long relied upon fictitious reasons in conducting stops, detentions, interrogations and searches of motorists. They have engaged in an unabated, continuing pattern of wrong and unlawful doings and practice of discrimination.

(Dk. 35, p. 5).[1] This paragraph is devoid of any specific factual allegations of a defendant wrongfully acting against the plaintiff.

>    Paragraph 19 alleges:
>
>    Today, the defendants, like many law enforcement agencies across the country, participate in a federally funded drug interdiction program sponsored by the United States Drug Enforcement Agency ("DEA") the sponsoring agency, provides training and instructors for state and local law enforcement agencies, teaching them how to identify highway travelers line-like programs encourage officers to rely upon minor or fictional traffic code violations that can be used as an excuse or "pretext" to stop motorists that somehow seem "suspicious."

*Id.* This paragraph too lacks any factual allegations specific to Mr. Meyer, to his traffic stop, or to a named defendant. This court already has determined that the plaintiff cannot assert a viable legal challenge to his traffic stop for a license tag violation, because he admitted in state court that his car did not have a license tag displayed and he was convicted for this license tag

---

[1] The plaintiff should be mindful that in signing this pleading with this allegation he "certifies that to the best of [his] . . . knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  . . . the factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. 11(b).

violation. (Dk. 37, p. 9). Nor does he have a constitutional claim for his arrest on this violation. *Id.* at 10.

    Paragraph 20 alleges:

> Officers will also engage in sustained interrogation designed to uncover further "indicators" of criminal drug activity in the form of "suspicious" answer or may (sic). As yet another technique available to them, officers are trained to seek consent to search-which most unwary motorists readily give-so that there is no need to point to any probable cause should questions about the legality of the search arise later.

(Dk. 35, p. 4). This paragraph does not refer to Mr. Meyer or to a named defendant and does not allege that any such interrogation techniques were used against him. The plaintiff does not even allege that any suspicion of drug activity motivated his particular traffic stop, arrest, questioning, or detention.

    Paragraphs 21, 22 and 23 allege:

> 21.  Officers are trained to stop motorists for insignificant vehicle code infractions, the vast majority of which result in no more than a verbal warning.
>
> 22. As a matter of policy, officers are encourage to use vehicle code violations such as weaving, improper lane changes, burned out license plate lights, tinted windows, following too closely or seat belt violations, as excuses to stop drivers and attempt to search their cars for drugs. Once the officers have an excuse for the stop, they are trained to begin questioning and searching the occupants of the vehicle.
>
> 23. Law enforcement policy permits officers to detain a motorist during any traffic stop for the purpose of conducting a search. Pursuant to this policy officers routinely detain motorists for the purpose of searching their vehicles, even though the officers have no probable cause, or even reasonable suspicion, that the motorists are carrying illegal drugs or engaged in any crime or planned criminal activity.

8

(Dk. 35, p. 6). These allegations again include nothing factually related to this case. None of the listed traffic violations were involved here. Convicted with his own admission of having operated his car without a displayed license tag, the plaintiff is unable to make a plausible claim that he was targeted and that his stop was the result of such investigative techniques. In sum, what Mr. Meyer regards as the "facts giving rise to this action" are actually blanket assertions bearing little association to the facts already known and alleged in this case.

As the court earlier observed and the defendants have noted since, the plaintiff appears to be dropping a number of his claims from his case. (Dk. 38, pp. 5-6). Consequently, if the plaintiff intended his proposed amendments to include those prior claims, then it is even more deficient and implausible than his original pleadings. The court fully addressed those claims in the October 15th order, and Mr. Meyer comes forward with nothing that would necessitate revisiting those rulings.[2]

---

[2] In his late reply, Mr. Meyer takes the position that "[a] main ingredient in this case is the Excessive Bond charge of $750. Much of this case is a direct result of the excessive bond charge and the Plaintiff's ability to post it. Especially after $300 went missing from wallet in car while being impounded." (Dk. 40, p. 2). He repeats his allegation that the $750 bond imposed in his case violated state law and concludes it "is clearly a violation of the Eighth Amendment." *Id*. The violation of a state law does not give rise to a § 1983 claim, so the plaintiff still has not asserted a viable claim. Since the bonds here were set according to municipal law and municipal administrative orders, (Dk. 37, pp. 18-19), the plaintiff's allegations are not legally sound. Mr. Meyer's latest allegations do not cure these problems and do not state a plausible claim that a $750 bond here would give rise to an Eighth Amendment violation.

A close reading of Mr. Meyer's proposed amendment leaves the impression that claims and allegations have been borrowed from another case that involved either a class action or multiple plaintiffs with pattern and practice allegations based on facts materially different from Mr. Meyer's case.[3] The proposed pleading employs such sweeping terms as "pattern of wrong and unlawful doings and practice of discrimination," "biased vehicular stops, and biased based citations," and "illegal and unconstitutional policies and practices," but the pleading provides few factual details to support their use here. (Dk. 35, pp. 4-5).  Mr. Meyer's pleading appears to turn on this allegation that there exists a "pattern and practice of illegal traffic stops, illegal detentions and illegal searches of out of state or out of county motorists traveling on the public streets and highways of the State of Kansas."  (Dk. 35, p. 3). Mr. Meyer, pointing to his residency in Nebraska, apparently regards himself as part of the class of "out of state" motorists traveling through Kansas who are subject to "illegal" traffic stops, detentions, and searches. Conclusory allegations of "discrimination" and constitutional violations do not state claims for relief without sufficient factual allegations showing them to be more than simple speculation. This latest legal theory for relief does not overcome the dispositive deficiencies in the plaintiff's pleading of constitutional violations. Specifically, Mr. Meyer does not allege enough facts to support any constitutional violation in his

---

[3] Mr. Meyer's proposed pleading repeatedly uses "plaintiffs" rather than "plaintiff."

traffic stop, the search of his vehicle, or his detention. The court will briefly discuss each proposed "cause of action" and show that it is subject to dismissal.[4]

In his "first cause of action," Mr. Meyer claims his "rights to equal protection of the laws" under the 14th Amendment and 42 U.S.C. § 1983 were violated by the "Defendants acting under color of law institute, authorize, tolerate, ratify, permit and acquiesce in policies, practices and customs of detention, searches and seizures which involve intentional discrimination in the provision of law enforcement services." (Dk. 35, p. 7). Reading in the incorporated allegations, the plaintiff presumably is claiming that as an out-of-state citizen his right to equal protection was violated because he was subjected to an "illegal traffic stop[], illegal detention[] and illegal search[]." (Dk. 35, p. 3). As already discussed above, Mr. Meyer has not asserted plausible claims for unlawful traffic stop, illegal detention, or illegal search. His proposed amendment offers no additional factual allegations to cure the pleading infirmities.

While the stop, detention and search may be objectively reasonable under the Fourth Amendment, they may be unconstitutional if they are result of "selective enforcement of the law based on considerations

---

[4] It also must be noted that the plaintiff's late reply fails to address the legal deficiencies with his second amended pleading. He denies the factual accuracy of the defendants' characterization that he was driving without proof of insurance. He does not attempt to argue how this disputed factual allegation would protect his claims from dismissal.

11

such as race." *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (group may be identifiable such as by race, religion or common exercise of constitutional rights), *cert. denied*, 523 U.S. 1118 (1998).[5] To state a selective enforcement claim, the complaint must include allegations showing that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Harris v. City and County of Denver*, 2012 WL 263046 at *4 (D. Colo. 2012); *see Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). It "is not sufficient to meet the proper federal court pleading standards" to allege simply that a policy or custom exists and that because the plaintiff was stopped then he must have been a victim of it. *Mitchell v. Township of Pemberton*, 2010 WL 2540466 at *5 (D.N.J. 2010). The plaintiff "cannot merely claim that a racial profiling policy or custom caused a constitutional violation, without a single fact, aside from the Plaintiff's particular incident, to support such a claim." *Id.* at *6. "To show a discriminatory purpose, a complaint must contain allegations showing that discriminatory intent was a motivating factor in the decision to enforce the criminal law against the defendant." *Harris v. City and County of Denver*, 2012 WL 263046 at *4 (D. Colo. 2012) (citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006)).

---

[5] The court will discuss later any claimed violation of Mr. Meyer's constitutional right to travel.

Mr. Meyer's proposed pleading identifies only one group, non-residents of Kansas exercising the right to travel through Kansas.[6] He has failed to plead, however, a claim for the violation of his right to equal protection. There are no factual allegations showing that a Kansas resident similarly situated to him was not stopped, detained or arrested. Nor are factual allegations that his non-residence was a motivating factor in his stop, detention, or arrest. *See Cosgrove v. Kansas Department of Social and Rehabilitative Services*, 2012 WL 2108224 at \*2 (10th Cir. 2012); *Harris v. City and County of Denver*, 2012 WL 263046 at \*5.[7] Without basic allegations to support these central elements, the plaintiff's equal protection claim would not survive a motion to dismiss.

The "second cause of action" is a sweeping and conclusory claim that Mr. Meyer was subjected to "lengthy detentions, interrogations and searches, without probable cause or reasonable suspicion to believe that any crime had been committed . . . in violation of the Fourth Amendment guarantee against unreasonable searches and seizures, and giving rise to . . . . claims pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983." (Dk. 35, p. 7). This pleading does not address or cure the pleading deficiencies

---

[6] Mr. Meyer's late reply adds: "Nowhere in the United States are citizens arrested on these fix-it ticket charges." (Dk. 40, p. 1). This allegation does not support either element--a discriminatory intent or a discriminatory effect--required for an equal protection claim.

[7] Assuming Mr. Meyers may have intended to bring a "class-of-one equal protection claim," he fairs no better in pleading those required elements. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-1217 (10th Cir. 2011).

13

outlined in the court's prior order. (Dk. 37, pp. 9-12). This claim would be subject to dismissal.

Mr. Meyer seeks to plead as his "third cause of action" a violation of his fundamental right to interstate travel as protected under "the Commerce Clause and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment." (Dk. 35, p. 8). "Freedom to travel is indeed a basic Constitutional right." *United States v. Eckhart*, 569 F.3d 1263, 1272 (10th Cir. 2009) (citation omitted), *cert. denied*, 130 S. Ct. 1752 (2010). This right "protects individuals from 'statutes, rules or regulations which unreasonably burden or restrict this movement.'" *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989) (quoting *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969)). Being stopping and arrested for not having a license plate did not unreasonably burden or restrict Mr. Meyer's travel. *See id*. Nor has he alleged "any actual barriers to interstate travel or to any legislation that inhibits the rights of any citizens to freely move between the states." *See Powell v. Bucci*, 2006 WL 2052159 at *8 (N.D.N.Y. 2006). This action is subject to dismissal.

For his fourth cause of action, Mr. Meyer asserts for the first time a violation of 42 U.S.C. § 1981. To state an actionable claim, the plaintiff must allege the defendants acted with a racially discriminatory intent in interfering with his activities that are protected under § 1981. *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir.

14

2001), *cert. denied*, 534 U.S. 1131 (2002). His proposed action fails to allege this basic intent element and his membership in any racially protected class. The plaintiff's § 1981 claim would be dismissed for failure to state a claim. *See Church v. Oklahoma Correctional Industries*, 2011 WL 4376199 at *6 (W.D. Okla. 2011), *adopted*, 2011 WL 4383275 (W.D. Okla. 2011), *aff'd*, 459 Fed. Appx. 806 (10th Cir. 2012).

Mr. Meyer again asserts a conspiracy claim under 42 U.S.C. § 1986 calling it his fifth cause of action. This proposed amendment fails to state an actionable claim for the same reasons expressed in the court's prior order. (Dk. 37, pp. 25-27). The amendment to add a fifth cause of action is futile.

The plaintiff's sixth cause of action pleads the open-ended and vague claim that the defendants "interfered and/or attempted to interfere with plaintiffs' exercise and/or enjoyment of their (sic) rights as secured by the United States Constitution and/or Kansas Constitution, in violation of Kansas Civil Code." (Dk. 35, p. 9). Lacking specific substantive references and factual allegations, this pleaded action states no claim for relief and is subject to dismissal.

The plaintiff's seventh, eighth and ninth causes of action are formulaic recitations of state tort claims without any supporting factual allegations. Mr. Meyer proposes that the court should exercise "supplemental jurisdiction over the state law claims." (Dk. 35, p. 4). The court intends to

dismiss all claims for which the plaintiff asserts original federal jurisdiction. Thus, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (internal quotation marks and citation omitted)), *cert. denied*, No. 11-1504, 2012 WL 2132421 (2012).

Mr. Meyer's tenth cause of action seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202, namely that the defendants violated his constitutional and statutory rights. The defendants correctly contend that this new action would not survive a motion to dismiss. "The Declaratory Judgment Act is a procedural device that creates no substantive rights and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984)." *Cannon v. JPMorgan Chase Bank, N.A.*, 2011 WL 6838614 at *6 (E.D. Tex. 2011). Mr. Meyer's claim for declaratory relief is based on claims subject to dismissal. "A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred. *Int'l Assoc. of Machinists and Aerospace Workers v. Tennessee Valley Authority*, 108 F.3d 658, 668 (6th Cir.1997)." *Sefa v. Fayette County Police*, 2012 WL 2793015 at *2 (E.D. Ky. 2012). Additionally, the plaintiff cannot meet the case or

16

controversy requirement, because he offers no plausible allegations of a real and immediate threat of future injury. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 81 (D.D.C. 2007) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983); *Van Deelen v. Fairchild*, 2005 WL 3263885 at *7 (D. Kan. 2005) ("That the relief sought would give plaintiff the satisfaction of a declaration that he was wronged in the past is insufficient to create an actual, live controversy. *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997)."), *aff'd*, 2006 WL 2507599 (10th Cir. 2006). This cause of action would be subject to dismissal.

The plaintiff's proposed second amended complaint cures none of the dispositive pleading infirmities and adds claims and theories that similarly fail to state a plausible basis for relief. That Mr. Meyer believes his "case is NOT a frivolous lawsuit" does not overcome the pleading requirements imposed on all litigants. Mr. Meyer misapprehends this court's ruling in saying that his claims were wrongly and prematurely tried. Rather, the court simply found his pleadings so wanting in factual allegations and in viable legal theories that dismissal of the claims was compelled under the governing standards of Rule 12(b)(6). Allegations that are nothing more than labels and conclusions or formulaic recitations devoid of factual underpinning will not suffice. Mr. Meyer cannot state a plausible claim on the facts he has alleged. The defendants have shown that the plaintiff's proposed second amended complaint would be subject to dismissal. For all

these reasons, the court denies the plaintiff's motion for leave to amend. The court also finds that it would be futile to give Mr. Meyer any more opportunities to amend.

IT IS THEREFORE ORDERED that defendants' motions to dismiss (Dks. 17, 25) are granted for the reasons stated herein and in the court's October 15th order (Dk. 37);

IT IS FURTHER ORDERED that the plaintiff's motion for leave to file a second amended complaint (Dk. 35) is denied in that the proposed amendment fails to cure the deficiencies in the original pleading and would not survive a second motion to dismiss.

Dated this 21st day of November, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge